## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **BARBARA VECCHIO,** § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | NO. _____ |
| § | |
| § | |
| § | |
| **TK AIRPORT SOLUTIONS, INC** § | |
| *Defendant* § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Barbara Vecchio and files her Original Complaint against TK Airport Solutions, Inc ("TKAS") and hereby alleges as follows:

### NATURE OF COMPLAINT

This is an action instituted pursuant to alleged violations of the Plaintiff's rights under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq, and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq to remedy acts of employment discrimination and retaliation perpetrated against her by Defendant TKAS. Plaintiff contends that TKAS's employees discriminated against her because of her sex, age, and national origin on more than one occasion when TKAS management treated Ms. Vecchio in a manner that made her extremely uncomfortable, TKAS Human Resources advised the only solution to this treatment was to find another job, and TKAS terminated her without any warning or prior discipline violations.

### A.    PARTIES

1. Plaintiff Barbara Vecchio is an individual who is an Italian citizen with a United States Green Card.

2. Defendant, TK Airport Solutions, Inc., is a foreign for-profit corporation doing business in

1

Texas. Defendant may be served by delivering a copy of the summons and of the complaint to Defendant's registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## B.     JURISDICTION and VENUE

3.     This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)2 because a substantial part of the events or omissions giving rise to this claim occurred in this district and pursuant to 42 U.S.C. Section 2000e-5(f)(3) as Plaintiff was employed at TKAS in Fort Worth, Texas, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## C.     FACTUAL BACKGROUND

5.     Ms. Vecchio was hired by TKAS in June of 2020 as a Senior Finance Manager. She moved her family to the Fort Worth area from Des Moines, Iowa. She was quickly promoted to Finance Director in October of 2020. Upon her employment as a Director, she learned that the Company had a $23 million dollar deficit. By the end of the year 2021, she improved the company's profit margins to nearly positive, and by the end of the year 2022, the Company recorded a profit of almost $2 million dollars.

6.     In her performance review of fiscal year 2022, dated September 23rd, 2022, Ms. Vecchio was praised throughout the review in each section, and there was no discussion of corrective action or need for improvement. Matthew Watkins, TKAS Managing Director North America and Ms. Vecchio's supervisor at the time, provided the review. The end of the review stated that, "She has always been a reliable and dedicated team member and is a key contributor to the future success of the organization." One month later in October 2022, Ms. Vecchio began reporting directly to Manuel

Torres ("Torres") who was named the TKAS Managing Director North America branch of The Company.

7. In the fall of 2022, CEO Manuel Alvarez ("Alvarez") visited the Company. Ms. Vecchio attended meetings with Alvarez and the CFO of the Company, Chief Operating Officer, Inigo Landa, and Mr. Ignacio Medina ("Medina") via virtual meetings. Alvarez, Landa, and Medina are citizens of and reside in Spain. On October 4th, 2022, Ms. Vecchio met with Alvarez, Landa, Torres, and Medina to review the quarterly forecast. During the meeting, Ms. Vecchio explained that the Company was not doing well financially, and that the Company was expected to record a loss for the quarter if corrective measures were not taken immediately. The corrective measures centered around the method that the Company utilized to manufacture and install its bridges at airports. Ms. Vecchio further explained that the current methods implemented by Alvarez, Landa, and Medina were insufficient to correct the loss. Alvarez, Landa, and Medina responded to Ms. Vecchio's analysis and conclusions with strong language and aggressive posturing, making Ms. Vecchio extremely uncomfortable. She requested that Alvarez, Landa, and Medina speak and deal with her in a more professional manner. Ms. Vecchio spoke to the Human Resource ("HR") manager, Ms. Judy Davila ("Davila") about the behavior of Alvarez, Landa, and Medina on October 5, 2022, and Davila advised Ms. Vecchio to file a complaint with the Equal Employment Opportunity Commission (the "EEOC") and to start immediately looking for a new job. Davila, however, conducted no investigation of Ms. Vecchio's complaints.

8. Ms. Vecchio also shared her concerns regarding the behavior of Alvarez, Landa, and Medina with Torres on October 5, 2022. Torres responded that Alvarez, Landa, and Medina were under a lot of pressure to demonstrate to corporate headquarters that the business would continue its progress towards increased profitability and dismissed Ms. Vecchio's concerns.

9. Alvarez, Landa, and Medina continued their aggressiveness and posturing towards Ms. Vecchio during the three subsequent meetings they organized to examine her analysis and conclusions. These meetings were essentially interrogation sessions during which Ms. Vecchio was made to repeat many times the methodology used for the analysis and how the conclusions were reached even though she was using the methodology used to build the quarterly forecast during the entire time she was at the Company.

10. After these sessions, Ms. Vecchio again expressed her discomfort to Torres and asked him for advice about how to reduce the level of aggressivity. Torres never provided any guidance on how to manage the situation. Ms. Vecchio spoke with Ms. Davila of HR a second time regarding the aggressive behavior of Alvarez, Landa, and Medina toward her, but Davila advised Ms. Vecchio for a second time to just "start looking for a new job."

11. Ms. Vecchio met with Torres, Alvarez, Landa, and Medina twice regarding the company's financial future, including a meeting on November 30th, 2022. At the start of the November 30th meeting, Ms. Vecchio was informed that she was being terminated from her position because "she did not find opportunities to move the Company forward," barely two months after her positive job review in September 2022. Ms. Vecchio had received no prior warnings, performance improvement plans, disciplinary, or corrective actions. Ms. Vecchio remained in the meeting for two hours while she answered questions regarding the Company's financial review.

12. After being informed of her termination, Ms. Vecchio made a severance offer that was rejected by Torres. The Company then offered to pay 57% of her bonus, based on the reason that she failed to meet the company target. However, Ms. Vecchio learned that two of her previous colleagues (the former Managing Director and former Human Resources Director) received 100% of their bonus upon leaving the company. After being terminated, the Company "invited" Ms. Vecchio to continue actively working for the Company until December 31, 2022, which she did because she

4

needed the income.

13. Ms. Vecchio was replaced by 38-year-old Brook Smiddy ("Smiddy"). Smiddy was a Controller who worked under Ms. Vecchio.

14. Shortly after the termination of Ms. Vecchio, the Company's parent company, "TK Elevator" started an internal audit of the Company which ended in November 2023. As a result, the CEO Manuel Alvarez and the Chief Operating Officer, Inigo Landa, of the Company were both terminated for their attempts to skirt around and/or outright violate certain federal laws regarding immigration and the use of American made steel.

15. Ms. Vecchio believes that she was discriminated against because of her age, sex, and national origin, and that she was retaliated against for speaking out about inappropriate behavior, in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964.

### D.    PROCEDURAL BACKGROUND/ EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. On or around April 4, 2023, Plaintiff filed a Charge 5 with the Equal Employment Opportunity Commission ("EEOC").[1] The US Department of Justice, Civil Rights Division (the "Agency") issued a "Notice of Right to Sue within Ninety Days" letter dated January 12, 2024.[2] Plaintiff files the instant action within ninety (90) days from the date of the Agency's January 12, 2024 dismissal letter.

### F.    COUNT ONE

**Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.**

17. The foregoing paragraphs are re-alleged and incorporated by reference herein.

---

[1] A true and correct copy of the April 4, 2023 Letter containing the Charge 5 is attached and incorporated in Plaintiff's Original Complaint as Exhibit 1.

[2] A true and correct copy of the Notice of Right to Sue in Ninety Days Letter dated January 12, 2024 is attached and incorporated in Plaintiff's Original Complaint as Exhibit 2.

18. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff is an employee within the meaning of Title VII.

19. Title VII of the Civil Rights Act, codified at 42 U.S.C. § 2000e-16, prohibits discrimination against "any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin."42 U.S.C. § 2000e-2.

20. Pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), there is a burden shifting analysis that must be conducted in which the Plaintiff bears the initial burden of persuasion of establishing a prima facie case of discrimination under Title VII. The Plaintiff can prove their claim through direct evidence of disparate treatment or by offering circumstantial evidence to create an inference of discrimination. *Id.* at 802; *See also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

21. To establish a prima facie case of employment discrimination, Plaintiff must prove the following elements as a matter of law:(1) Plaintiff is a member of a protected group; (2) Plaintiff was qualified for the job Plaintiff formerly held; (3) Plaintiff was discharged; and (4) after Plaintiff was discharged, the position was filled by someone not within Plaintiff's protected class or Plaintiff was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Importantly, Plaintiff can establish a prima facie case by satisfying either prong of the fourth element. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).

22. Ms. Vecchio is a 49-year-old female Italian citizen; therefore, she is a member of a protected group. Ms. Vecchio was qualified to work as a finance director. Ms. Vecchio was terminated on December 31, 2022. Ms. Vecchio was replaced by Smiddy, a significantly younger woman and

6

someone not within Ms. Vecchio's protected class. Additionally, two colleagues in similar positions (a Managing Director and a Director of Human Resources) were paid their entire bonus upon their departure for the company, while Ms. Vecchio was offered only a percentage of her bonus. Ms. Vecchio has established a prima facie case for employment discrimination.

**<u>Retaliation</u>**

23. The foregoing paragraphs are re-alleged and incorporated by reference herein.

24. To establish a prima facie retaliation case, a plaintiff must show: (1) she was engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation") *Id*. Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records and may be subject to review by higher level supervisors. *Id*. "Temporal proximity between the protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *See Porter at 948*.

25. In this case, Ms. Vecchio was concerned and uncomfortable with the treatment she received from Alvarez, Landa, and Medina. Ms. Vecchio expressed her concerns to the Managing Director

7

and supervisor, and Human Resources, only to be told that she may lose her job. Ms. Vecchio was then terminated without indication or warning, only two months after receiving a very positive job review. Ms. Vecchio has established a prima facie case of retaliation under Title VII.

### G.   DAMAGES

26. As a direct and proximate result of Defendant's conduct, Plaintiff lost the opportunity to finish out her career with TKAS and as a result, seeks all equitable relief including but not limited to damages totaling $2,400,000.00 for the salary she would have earned if she had remained at TKAS for (15) more years or until she turned sixty-five (65).

### H.   PLAINTIFF'S DEMAND FOR JURY TRIAL

27. Plaintiff Barbara Vecchio asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### I.   ATTORNEY'S FEES

28. Plaintiff is entitled to an award of attorney's fees and costs under both Title VII, 42 U.S.C. 200e-5(k).

### J.   PRAYER

29. For these reasons, Plaintiff asks for judgment against Defendant for the following:

   a.   Compensation for all lost wages and benefits;

   b.   Prejudgment interest on lost wages and benefits and Postjudgment interest on all sums, including attorney's fees;

   c.   Compensatory damages in an amount to be determined by the Court;

   d.   Reasonable attorney's fees and costs of suit; and

   e.   All other relief to which the Court deems appropriate.

Dated: April 2, 2024

                        Respectfully submitted,

                        */S/ Debra Edmondson*
                        **Debra Edmondson**
                        Texas State Bar No. 24045824
                        debra@edmondsonlawfirm.com

                        **Joseph Glover**
                        Texas State Bar No.  24131334
                        josephg@edmondsonlawfirm.com

                        **The Edmondson Law Firm, P.L.L.C.**
                        P.O. Box 92801
                        325 Miron Dr., Ste. 100
                        Southlake, TX 76092
                        Telephone: (817) 416-5291

                        **ATTORNEYS FOR PLAINTIFF**